## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EMORY E. HACKMAN, JR., | ) | Case No. 10-17176-BFK |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| EMORY E. HACKMAN, JR. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Proceeding |
| | ) | No. 14-01190-BFK |
| vs. | ) | |
| | ) | |
| EDMUND E. WILSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION
### ON MOTION TO DISMISS OF HSBC HOLDINGS, PLC, AND
### HONG KONG AND SHANGHAI BANKING CORP.

This matter came before the Court on the Motion of HSBC Holdings, PLC, and Hong Kong and Shanghai Banking Corp. (together, "HSBC") to dismiss the Plaintiffs' Amended Complaint pursuant to Bankruptcy Rule 7012 (incorporating Federal Rules of Civil Procedure 12(b)(2)—personal jurisdiction—and Rule 12(b)(6)—failure to state a claim). Docket Nos. 132, 133. The Plaintiffs filed an Opposition to the Motion. Docket No. 152. HSBC filed a Reply Memorandum. Docket No. 154. The Court heard the arguments of the parties on June 9, 2105.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. The claims against HSBC are non-core claims. *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007) (a matter is "related to" a bankruptcy case where "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy'")

(emphasis removed) (quoting *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d

619, 625 (4th Cir. 1997)).[1] The Plaintiffs, having initiated the action and having litigated the case

for more than eight months in this Court without raising an objection to the Court's ability to

enter final orders, have consented to the entry of final orders by the undersigned bankruptcy

judge. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948–49 (2015); *Chesapeake*

*Trust v. Chesapeake Bay Enters., Inc.*, Civil No. 3:13CV344, 2014 WL 202028, at *3–4 (E.D.

Va. Jan. 17, 2014); *Corliss Moore & Assocs., LLC v. Credit Control Servs., Inc.*, 497 B.R. 219,

229 (E.D. Va. 2013). *See also* Docket No. 5 at ¶ 5 (Initial Scheduling Order) ("Any party not

consenting to the entry of a final order by the Bankruptcy Judge shall file a Motion to withdraw

the reference or for other appropriate relief within **30 days** of the entry of this Scheduling Order,

and shall promptly set the matter for a hearing. The failure to comply with the terms of this

paragraph shall be deemed to constitute consent to the entry of final orders by the Bankruptcy

Judge.")

    The allegations supporting the Plaintiffs' claims are taken as true for purposes of this

Motion. The Plaintiffs claim that they entered into a Loan Settlement Agreement with Ed Wilson

and his company, Fountain Group Companies of Utah, Inc. ("Fountain Group"). Docket No. 113

at ¶ 10 (Amended Complaint). The Plaintiffs allege that they transferred $150,000 to Wilson on

February 28, 2008, through an intermediary known as Ross Pacific Trading Co. *Id.* They allege

that they made a second transfer of $150,000, this time "directly to Fountain Group's Wells

Fargo bank account." *Id.* The Plaintiffs allege that Wilson embezzled their funds. *Id.* at 12. They

---

[1] Mr. Hackman filed for Chapter 11 bankruptcy protection with this Court on August 26, 2010. His Chapter 11 Plan
was confirmed on November 27, 2012. *In re Emory E. Hackman, Jr.*, Case No. 10-17176-BFK, Docket No. 196.
This Adversary Proceeding was filed on November 30, 2014. Docket No. 1. The Plaintiffs are Emory Hackman, Jr.,
the Mary Cook Hackman Arlington Trust and Gainesville Commerce Center, LLC.

further allege that funds were wired from Wilson's Bank of America and Wells Fargo accounts to HSBC in Hong Kong. *Id.* at ¶ 15.

For the reasons stated below, HSBC's Motion will be granted.

## I.     The Defendants' Rule 12(b)(2) Motion (Personal Jurisdiction).

Due process requires that a defendant have sufficient minimum contacts with the forum such that requiring the defendant to appear and defend its interests does not "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Such contacts must be "purposeful" in order to satisfy the minimum contacts test. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The inquiry is ordinarily a two-part test: (1) whether jurisdiction is authorized by the long-arm statute of the state in which the court sits; and (2) whether exercising jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). The plaintiff has the burden of proof to make a prima facie showing in support of its assertion of jurisdiction. *Universal Leather, LLC v. KORO AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Where a personal jurisdiction motion is decided on the basis of affidavits, the court "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).[2]

---

[2] The Plaintiffs do not argue that general jurisdiction is at issue here, nor could they make such an argument. For general jurisdiction, the Plaintiffs would be required to make a showing that HSBC's contacts with the forum are so "'continuous and systematic'" as to make HSBC "'essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). The presence of HSBC Bank U.S.A., N.A., in the United States, which the Plaintiffs allege to be HSBC's agent (discussed below), may be relevant to specific personal jurisdiction, but could not give rise to a claim for general jurisdiction. *Daimler AG*, 134 S. Ct. at 759 n.13.

The Court uses the term "ordinarily" because in a bankruptcy adversary proceeding the court looks to nationwide contacts, not contacts with the forum state. *In re Celotex Corp.*, 124 F.3d at 630. In *Celotex*, the Fourth Circuit, noting that Bankruptcy Rule 7004(d) authorizes nationwide service of process, held: "we need only ask whether [the defendant] has minimum contacts with the United States such that subjecting it to personal jurisdiction does not offend the Due Process Clause of the Fifth Amendment to the United States Constitution." *Id. See also In re Arcapita Bank B.S.C.(c)*, 529 B.R. 57, 64 (Bankr. S.D.N.Y. 2015); *In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 882 (Bankr. S.D.N.Y. 2015); *In re Hellas Telecomm. (Luxembourg) II SCA*, 524 B.R. 488, 506 (Bankr. S.D.N.Y. 2015) ("courts have routinely held that a nationwide minimum contacts test applies where nationwide service of process is authorized by federal law").

HSBC Holdings, PLC, is a United Kingdom bank holding company with its principal place of business in London. Docket No. 133-1 at ¶ 2 (Chambers Declaration). Hong Kong and Shanghai Banking Corporation, Ltd., is incorporated in Hong Kong and is headquartered in Hong Kong. Docket No. 133-2 at ¶ 2 (Stafford Declaration). HSBC Holdings does have an indirect, wholly owned subsidiary, HSBC Bank U.S.A., N.A. Docket No. 133-1 at ¶ 7 (Chambers Declaration). HSBC Bank U.S.A., N.A., is not a party to this lawsuit. These facts are not disputed by the Plaintiffs.

Taking the Plaintiffs' jurisdictional allegations at face value, they focus on Mr. Wilson's conduct, not the conduct of HSBC. For example, the Plaintiffs assert: "HHKSBC [the Plaintiffs' designation for these two defendants] participated in Ed Wilson's Money Laundering, Structuring and Concealment (Compl. Paras. 15, 16 and 64). The particular details are the funds he embezzled, and the 600 transfers he made." Docket No. 152 at ¶ 2E (Objection to Motion to

4

Dismiss). The Plaintiffs further allege: "Ed Wilson used computers in violation of the Virginia

Computer Crimes Act (Compl. Para. 19) and particularly with his banks (Compl. Para. 19N)

including HHKSBC (Compl. Paras. 242 through 246; Plaintiff's Rule 26 Disclosures, Doc 129-

12)." *Id.* at ¶ 2G. These allegations, while they may be sufficient to establish personal

jurisdiction over Ed Wilson, do not allege any purposeful activity by HSBC in the United States.

The Plaintiffs allege that HSBC's U.S. banks, HSBC Bank U.S.A., N.A., and HSBC

Bank Nevada, N.A. (which filed a proof of claim in Mr. Hackman's bankruptcy case for a credit

card debt) acted as HSBC's agents in the United States. *Id.* at ¶ 2K. Certainly, the presence of

agents within the forum is relevant to a determination of specific jurisdiction. *Daimler AG*, 134

S. Ct. at 759 n.13. It is clear that the presence of HSBC Bank Nevada, N.A., in the United States

had nothing to do with the transactions at issue in this case.

With respect to the allegation that HSBC Bank U.S.A., N.A., acted as HSBC's agent in

the United States, the core of the Plaintiffs' jurisdictional allegation is that Ed Wilson made

hundreds of transfers from banks located in the United States to HSBC in Hong Kong. The Court

has searched the Amended Complaint, though, for allegations that Mr. Wilson actually used

HSBC Bank U.S.A., N.A., to wire the funds to HSBC in Hong Kong. There are no such

allegations. In fact, the Plaintiffs' Initial Rule 26(a) Disclosures in this adversary proceeding

allege that Mr. Wilson transferred the funds from *his* bank accounts (not correspondent accounts

maintained by HSBC in the U.S.) at Bank of America and Wells Fargo. *See* Docket No. 129-11

("Plaintiffs' List of Known Ed Wilson Transactions with HSBC, as of April 6, 2015"). The

Amended Complaint itself alleges: "There were transactions at Bank of America and at Wells

Fargo of $20,000 each and more that exceeded $10,000 in the Aggregate per day of transfers to

HSBC's subsidiary Hong Kong and Shanghai Banking Corp ("HKSBC"), *and numerous wire*

*transfers from Bank of America and Wells Fargo to HSBC's subsidiary in Hong Kong*

*("HKSBC")* structured to avoid reporting where on many days the aggregate amounts exceeded

the minimum required for reporting." Docket No. 113 at ¶ 15 (Amended Complaint) (emphasis

added).

In the context of wire transfers from the forum to a defendant located outside the forum,

the courts have held that "[t]he unilateral activity of those who claim some relationship with a

nonresident defendant cannot satisfy the requirement of contact with the forum State." *Cmty.*

*Fin. Group, Inc. v. Stanbic Bank, Ltd.*, Civil Action No. 12–3851 (FSH), 2013 WL 3223371, at

*3 (D.N.J. June 25, 2013) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *Dtex, LLC v.*

*BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 645 (D.S.C. 2005) (for purposes of general

jurisdiction, "[a]s federal courts have held on many occasions, such customer-initiated bank-to-

bank wire transfers do not establish the 'continuous and systematic' purposeful presence

necessary to establish personal jurisdiction over a foreign bank"); *United Fin. Mortg. Corp. v.*

*Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 894 (N.D. Ill. 2002) (wire transfers from

plaintiff in forum to defendant in California insufficient to establish minimum contacts); *In re*

*Arcapita Bank B.S.C.(c)*, 529 B.R. at 66 ("[the defendant's] use of a third party's correspondent

bank account is insufficient to establish specific jurisdiction").[3]

---

[3] The holding in *Arcapita* can be contrasted with the Second Circuit's decision in *Licci v. Lebanese Canadian Bank,* 732 F.3d 161 (2d Cir. 2013) ("*Licci II*"). In *Licci II*, the Second Circuit held that the exercise of personal jurisdiction over a foreign bank was consistent with due process because the foreign bank used *its own* correspondent account to wire funds to the defendant on multiple occasions. *Licci II*, 732 F.3d at 171 ("LCB's use of a correspondent account in New York to accomplish its dollar-denominated wire transfers was recurring. Indeed, the plaintiffs allege wire transfers through AmEx that numbered in the dozens and totaled several million dollars, so it cannot be said that LCB's contacts with New York were 'random, isolated, or fortuitous.'") (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). In this case, while there are multiple transfers alleged, none of the transfers were originated through a correspondent account maintained by HSBC in the United States.

The Plaintiffs argue that HSBC maintained a web site that could be accessed in "support of international transactions including for private individuals without limit which [implies] it is asking for money laundering." Docket No. 152 at ¶ 2M (Plaintiffs' Opposition).[4] The Fourth Circuit has held with respect to internet activity:

> [W]e have adopted a three-part inquiry to determine whether a defendant is subject to jurisdiction in a State because of its electronic transmissions to that State. The inquiry considers: (1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (internal quotation marks and citation omitted). The Amended Complaint in this case fails to allege that Mr. Wilson actually used the HSBC web site to facilitate any of his transfers of funds to HSBC in Hong Kong. In fact, as noted above, the Amended Complaint and the Plaintiffs' Rule 26(a) Disclosures indicate that all of the transfers were made to HSBC from Mr. Wilson's accounts at Bank of America and Wells Fargo. Docket No. 129-11. There are no allegations that Mr. Wilson used the HSBC web site for the purpose of initiating wire transfers from the United States to Hong Kong. *See also Hunt v. Calhoun Cnty. Bank, Inc.*, 8 F. Supp. 3d 720, 728 (E.D. Va. 2014) ("while Plaintiff points to Calhoun County Bank's website as a basis of jurisdiction, Plaintiff's cause of action did not arise out of Defendants' online activities"); *Project Honey Pot v. John Does*, No. 1:11CV15

---

[4] The Court previously dismissed the Plaintiffs' claims for money laundering, holding that there is no private right of action under the money laundering statutes. *See* Docket No. 15 (Order Setting Status Hearing, eod 12/17/2014) (citing *Shah v. Rodino*, No. 3:13–CV–103 JD–CAN, 2014 WL 1230733, at *8 (N.D. Ind. Mar. 24, 2014); *Spitzer Mgmt., Inc. v. Interactive Brokers, LLC*, No. 1:13 CV 2184, 2013 WL 6827945, at *2 (N.D. Ohio Dec. 20, 2013) (Bank Secrecy Act and Patriot Act); *Whittington v. Morgan Stanley Smith Barney*, Civil No. 1:12cv112, 2012 WL 4846484, at *3 (W.D.N.C. Oct. 11, 2012); *de Pacheco v. Martinez*, 515 F. Supp. 2d 773, 787 (S.D. Tex. 2007); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000)); Docket No. 84 (Order (A) Dismissing Involuntary Plaintiffs, (B) Dismissing Cross-Plaintiffs, and (C) Dismissing Counts in Complaint Related to Money Laundering, eod 2/2/2015).

(LMB/JFA), 2012 WL 1854184 (E.D. Va. May 21, 2012) ("Although the advent of complex global financial systems raises interesting questions of personal jurisdiction, 'technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant.'") (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)).

Finally, the Plaintiffs urge the Court to find personal jurisdiction based on the fact that HSBC has agreed to pay substantial sums in certain money laundering investigations. *See* Franklin, Joshua, REUTERS, *HSBC to Pay $43 Million in Geneva Money Laundering Settlement*, http://www.reuters.com/article/2015/06/04/us-hsbc-tax-swiss-idUSKBN0OK1G220150604; Smythe, Christie, BLOOMBERGBUSINESS, *HSBC Judge Approves $1.9B Drug-Money Laundering Accord*, http://www.bloomberg.com/news/articles/2013-07-02/hsbc-judge-approves-1-9b-drug-money-laundering-accord. The Court does not see how a settlement between HSBC and Swiss authorities in Geneva would cause this Court to have personal jurisdiction over HSBC in the United States. With respect to the U.S. settlement, there is no suggestion in this case that Mr. Wilson was a South American drug dealer, which was what was at issue in the U.S. settlement. *See id.* ("HSBC Holdings Plc's $1.9 billion agreement with the U.S. to resolve charges it enabled Latin American drug cartels to launder billions of dollars was approved by a federal judge.") The Court views the Plaintiffs' reliance on these settlements in order to attempt to establish personal jurisdiction over HSBC in the United States to be frivolous.

The Court finds that, taking the Plaintiffs' jurisdictional allegations in the light most favorable to the Plaintiffs and giving them the benefit of all the inferences, the Plaintiffs have failed to meet their burden to prove that HSBC has purposefully availed itself of doing business in the United States. The Court will grant HSBC's Motion to Dismiss on the ground of lack of personal jurisdiction.

## II.     The Defendants' Rule 12(b)(6) Motion (Failure to State a Claim).

HSBC also moves to dismiss the Plaintiffs' Amended Complaint on the ground that it

fails to state a claim against either of the HSBC entities, pursuant to Bankruptcy Rule 7012

(incorporating Federal Rule of Civil Procedure 12(b)(6)). Under the Supreme Court's decisions

in *Twombly* and *Iqbal*, to survive a motion to dismiss under Rule 12(b)(6), the complaint must

state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Id.* at 556. In *Iqbal*, the Court held: "[W]hether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court accepts as true all well-pleaded facts in the Amended Complaint, but is not

required to accept allegations that are legal conclusions. *Walters v. McMahen*, 684 F.3d 435 (4th

Cir. 2012) ("[A]lthough a court must accept as true all factual allegations contained in a

complaint, such deference is not accorded to legal conclusions stated therein. The mere recital of

elements of a cause of action, supported only by conclusory statements, is not sufficient to

survive a motion made pursuant to Rule 12(b)(6).") (citing *Iqbal*, 556 U.S. at 678).

The Plaintiffs' 94-page, 78-Count Amended Complaint alleges facts that are common to

the Counts against HSBC. The Plaintiffs allege that in February 2008, Plaintiff Emory Hackman,

Jr., entered into a Loan Settlement Agreement with Fountain Group of Companies of Utah, Inc.

Docket No. 113 at ¶ 10 (Amended Complaint). The Plaintiffs allege that Ed Wilson is the

principal behind Fountain Group. *Id.* Mr. Hackman alleges that he transferred $150,000 "to an

authorized intermediary of Ross Pacific, [which] transferred [the funds] to Fountain Group on

9

March 7, 2008." *Id.* He alleges that he transferred an additional $150,000 on August 16, 2008,

"directly to Fountain Group's Wells Fargo bank account." *Id.*

The Plaintiffs allege that "Ed Wilson embezzled the Plaintiff's funds." *Id.* at ¶ 12. The

Plaintiffs further allege with respect to Mr. Wilson's alleged embezzlement and money-

laundering scheme:

> There were specific transfers that breached duties as defined by Federal law, rules, and regulations, and should have caused an internal glance at the banking records, which but for negligence by the bank(s) and their Willful Blindness by conscious avoidance of knowledge or studied ignorance would have brought on a more complete examination. Those banks are imputed in equity with knowledge (Doc 1-2; Equity Section). *There were transactions at Bank of America and at Wells Fargo of $20,000 each and more that exceeded $10,000 in the Aggregate per day of transfers to HSBC's subsidiary Hong Kong and Shanghai Banking Corp ("HKSBC"), and numerous wire transfers from Bank of America and Wells Fargo to HSBC's subsidiary in Hong Kong ("HKSBC") structured to avoid reporting where on many days the aggregate amounts exceeded the minimum required for reporting.* Ed Wilson has been reported, is believed, and therefore alleged to have traveled to New York, and London, England, for arranging his relationship with HSBC and its subsidiary(ies). There are e-mails in existence and banking records of Ed Wilson traveling to Hong Kong, China. He also made banking transactions in Alexandria, Virginia, near the home of his sister Nancy Wilson and his mother Florence Wilson. When asked, Ed Wilson said moving money overseas was "easy if you know how" (Doc 1-4). Ed Wilson didn't do all that he did without the help of the others some of whom are also Defendants here.

*Id.* at ¶ 15 (emphasis added).

The striking thing about the Amended Complaint's allegations when it comes to HSBC is

the absence of any allegation that HSBC or any of its employees were complicit in any way with

Mr. Wilson in the alleged conversion of Mr. Hackman's funds. With this in mind, the Court turns

to each of the Plaintiffs' specific claims against HSBC.

    A.  *Count 69—Recovery of Escrow Funds; Count 70—Constructive Trust;*
          *Count 71—Injunctive Relief and a Freeze Order.*

Counts 69, 70 and 71 can be analyzed together because they all seek essentially the same

relief, the recovery of the funds forwarded by Mr. Hackman to Mr. Wilson and Fountain Group.

Count 69 seeks the recovery of Mr. Hackman's funds, which were supposed to be held in escrow

by Mr. Wilson and his company, Fountain Group. Count 70 seeks to impose a constructive trust

on the same funds. Count 71 seeks injunctive relief in the form of a freeze order, in order to

freeze the Plaintiffs' funds at HSBC. HSBC argues that each of these Counts is a remedy, not an

independent cause of action. The Plaintiffs argue that these are classic equitable remedies

available for the recovery of stolen property or property that was to be held in escrow. Whether

or not these equitable remedies can be plead as independent causes of action misses the mark,

though, in the Court's view. More fundamentally, these remedies require the identification of a

specific fund representing the proceeds of the Plaintiffs' funds. The Plaintiffs are seeking the

return of their funds, a constructive trust on the funds, and a freeze of the funds, but the Plaintiffs

do not identify any specific property in the hands of HSBC to which these remedies could attach.

Although the Plaintiffs acknowledged at oral argument that they are seeking only the return of

specific property and not a money judgment against HSBC for these funds, the Amended

Complaint fails to identify any specific property to which these remedies could attach.

Count 69 requests the return of funds that were to be held in escrow, alleging that "HSBC

is in possession of funds rightfully belonging to the Plaintiff." Docket No. 113 at ¶ 231

(Amended Complaint). The difficulty is that the Plaintiffs fail to identify any specific funds in

the hands of HSBC that can be said to be the Plaintiffs' property or the proceeds thereof. There is

no allegation that the funds transmitted to Wilson and Fountain Group in 2008 are still on deposit

in a specific account at HSBC (which, in 2015, is unlikely). Count 69 fails to state a plausible

claim for the return of any specific property in which the Plaintiffs have an equitable interest.

Count 70 seeks a constructive trust. In order to maintain a claim for a constructive trust,

the plaintiff must be able to trace the funds into the *res* at issue. *Old Republic Nat'l Title Ins. Co.*

*v. Tyler (In re Dameron)*, 155 F.3d 718, 723 (4th Cir. 1998) ("Ordinarily, a party claiming entitlement to a trust must be able to trace its assets into the fund or property that is the subject of the trust.") There is no attempt at tracing in the Amended Complaint, not surprisingly since the funds were paid to Wilson and Fountain Group in 2008. The Plaintiffs cannot make a claim for a constructive trust where they are unable to trace the proceeds of their funds into specific bank accounts.

With respect to Count 71, requesting a freeze order, the Court cannot order such relief without either plausible allegations that HSBC is still in possession of the Plaintiffs' property, or compliance with the prejudgment attachment requirements set out in Va. Code § 8.01-537 (requiring a verified petition in attachment alleging "(i) the kind, quantity, and estimated fair market value [of the specific property at issue], (ii) the character of estate therein claimed by the plaintiff, (iii) the plaintiff's claim with such certainty as will give the adverse party reasonable notice of the true nature of the claim and the particulars thereof and (iv) what sum, if any, the plaintiff claims he is entitled to recover for its detention"), and § 8.01-537.1 (Plaintiff to file bond).[5] In the case of *Grupo Mexicano de Desarrollo S.A., et al. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court held that federal district courts lack the authority to issue pre-judgment freeze orders for ordinary legal claims, absence compliance with Federal Rule of Civil Procedure 64 (which incorporates State remedies for pre-judgment attachment procedures). *Id.* at 330–31 ("Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?") The Court held:

---

[5] The Court uses the Virginia pre-judgment attachment statutes as an example here. It is possible that the Utah or New York pre-judgment attachment statutes may be more applicable.

> More importantly, by adding, through judicial fiat, a new and powerful weapon to the creditor's arsenal, the new rule could radically alter the balance between debtor's and creditor's rights which has been developed over centuries through many laws—including those relating to bankruptcy, fraudulent conveyances, and preferences. Because any rational creditor would want to protect his investment, such a remedy might induce creditors to engage in a "race to the courthouse" in cases involving insolvent or near-insolvent debtors, which might prove financially fatal to the struggling debtor.

*Id.* at 331.

In *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489 (4th Cir. 1999), the Fourth Circuit held that the Supreme Court's decision in *Grupo Mexicano* was limited to actions for injunctive relief (i.e., freeze orders) in support of ordinary contract claims. The Fourth Circuit held that "when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *Id.* at 496. At the same time, the Fourth Circuit noted: "*This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.*" *Id.* at 496–97 (emphasis added). Here, the Plaintiffs do claim an equitable interest in the funds, because the funds were to be held in escrow by Mr. Wilson and Fountain Group and allegedly were wrongfully diverted. What is lacking, though, is any nexus between what is sought and what was lost. The federal courts, consistent with *Rahman*, have held that a freeze order may be available to recover specific property in which the plaintiff has an equitable interest, but not as a pre-judgment remedy for ordinary contract or other money damages claims. *See, e.g.*, *R.B. Dev. Co., Ltd. v. Tutis Capital LLC*, No. 12–CV–1460 (CBA)(SMG), 2012 WL 2357318, at *3 (E.D.N.Y. June 20, 2012) ("where the plaintiff can demonstrate an equitable interest in

13

*particular property*, the court may in certain circumstances enter an injunction freezing those

assets for the pendency of the litigation"); *Wishnatzki & Nathel, Inc. v. H.P. Iland-Wide, Inc.*,

No. 00 Civ. 8051(JSM), 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000) ("courts since *Grupo*

*Mexicano* have found that where plaintiffs seek both equitable and legal relief *in relation to*

*specific funds*, a court retains its equitable power to freeze assets") (emphasis added). The

Plaintiffs do not allege that at this point HSBC is in possession of their specific funds, and it is

highly unlikely that the Plaintiffs could plausibly make such an allegation, as the funds were paid

over to Wilson and Fountain Group in 2008, roughly seven years ago.[6]

In the absence of an identifiable *res*, or compliance with State court procedures for a pre-

judgment attachment, Counts 69, 70 and 71 fail to state plausible claims for relief. The Motion

will be granted as to these Counts.

### B.   Count 72—Unjust Enrichment.

Count 72 alleges that HSBC has been unjustly enriched by virtue of Mr. Wilson's

diversion of funds and his deposit of those funds with HSBC. Docket No. 113 at ¶¶ 239–40

(Amended Complaint).[7] To state a claim for unjust enrichment under Virginia law, the Plaintiffs

must allege: "(1) a benefit conferred; (2) knowledge that the benefit was conferred; and, (3)

acceptance or retention of the benefit in circumstances that would make it inequitable to keep the

benefit without paying for it." *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827 (E.D.

---

[6] The Court notes here that the Plaintiffs already have final, non-appealable judgments against Fountain Group and Wilson from the U.S. District Court in the amounts of $35,385,625.31, plus interest, and $42,280,311.48, plus interest, respectively. *Hackman v. Fountain Group Companies of Utah, Inc.*, Case No. 1:13-cv-275 (GBL/TCB) (Order entered 8/23/2013); *Hackman v. Wilson*, Civil Action No. 1:14cv838 (Order entered 7/24/2014). It is not clear to the Court why the Plaintiffs believe that they will be more successful in collecting on their claims by asserting equitable claims against HSBC for the return of their funds in this action than by executing on the judgments from the prior action.

[7] Paragraph 239 alleges: "The amounts of both of these claims are subject to discovery and further developments to determine the appropriate amount of the reimbursement for such damages." Docket No. 113 at ¶ 239 (Amended Complaint).

Va. 2013). *See Centex Constr. v. ACSTAR Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006).

The Court does not see how HSBC has been unjustly enriched here. Accepting the premise that

Wilson transferred the Plaintiffs' funds to an account at HSBC, HSBC would have a liability to

its depositor in the same amount.

The Plaintiffs suggest that HSBC has been benefitted because its rate of return on the

funds would have exceeded the amount of interest it paid to its depositor. Docket No. 152 at ¶ 43

(Plaintiffs' Opposition) ("where HHKSBC has had the benefit of the earnings from the Ed

Wilson money"). This benefit, the spread between amounts earned on deposits and the amounts

paid to the bank's depositors, however, is too attenuated from the nature of the wrong—Wilson's

wrongful diversion of the funds and the deposit of the funds at HSBC. Certainly the Plaintiffs did

not confer this benefit on HSBC. Moreover, if the Plaintiffs' theory were correct, then banks

would be exposed to these kinds of claims whenever one of their depositors is engaged in a legal

dispute with a third party over money. Indeed, under the Plaintiffs' theory, even if the funds were

deposited pursuant to a court order that the funds be held in escrow pending resolution of a

dispute (say, in an interpleader case), the bank holding the funds could be held liable for unjust

enrichment because it would be earning amounts on the escrowed funds in excess of the interest

that accrues on the funds in the account. No bank would accept deposits under those

circumstances.

Count 72 fails to state a plausible claim for unjust enrichment, and will be dismissed.

*C.   Count 73—Computer Crimes.*

Count 72 alleges violations of the Virginia Computer Crimes Act (VCCA), Va. Code §§

18.2-152.1, *et seq.* Virginia Code Section 18.2-152.3 provides in part:

Any person who uses a computer or computer network, without authority and:

1. Obtains property or services by false pretenses;

2. Embezzles or commits larceny; or

3. Converts the property of another;

is guilty of the crime of computer fraud.

Va. Code § 18.2-152.3.

Section 18.2-152.12 provides for civil actions for damages, including lost profits. Va. Code § 18.2-152.12. To show a violation of the VCCA, a plaintiff must demonstrate that the defendant: (1) used a computer or computer network without authority (2) with the intent to obtain property or services by false pretenses, embezzle or commit larceny, or convert the property of another. *Ford v. Torres*, No. 1:08cv1153 (JCC), 2009 WL 537563, at *7 (E.D. Va. Mar. 3, 2009).

The Amended Complaint alleges that Mr. Wilson made electronic funds transfers from Utah to HSBC in Hong Kong (the Court is not sure why the VCCA applies, as opposed to a similar Utah statute, but it will assume a Virginia connection). The Amended Complaint further alleges:

> The existing banking records received by the Plaintiff show Ed Wilson accessed his banking records through his computer and over the internet. Those existing records show electronic transfers to HSBC. The physical distance from Ed Wilson's location in St. George, Utah, to Hong Kong, China, is so great as to strongly suggest, is believed, and therefore alleged, that Ed Wilson was encouraged and aided by HSBC to access his accounts electronically over the Internet. He is suggested by others, is believed, and therefore alleged to have used the internet in communications with HSBC overseas in London, England, and Hong Kong, China. Ed Wilson was reported, is believed, and therefore alleged to have flown to New York and to England for establishing and coordinating his financial accounts at HSBC.

Docket No. 113 at ¶ 242 (Amended Complaint).

The allegation that it "is believed, and therefore alleged, that Ed Wilson was encouraged and aided by HSBC" is simply too vague to state a plausible claim. There are no facts alleged in Count 73 from which the Court could conclude that HSBC (as opposed to Wilson) obtained property or services by false pretenses, committed an embezzlement or larceny or converted the Plaintiffs' property.

Further, there is no allegation that HSBC's use of its own computer system was unauthorized. The Plaintiffs are legally incorrect when they argue that "HHKSBC also used computers and a computer network *without the authority of the rightful owner (the Plaintiffs) of the money transferred*[.]" Docket No. 152 at ¶ 44 (Plaintiffs' Opposition) (emphasis added). It is the unauthorized use of a computer network that gives rise to liability under the VCCA, not the authorized use of a computer network for the receipt of arguably illicit funds. The Court will dismiss Count 73.

### D.  Count 74—Virginia Business Conspiracy.

Virginia Code Section 18.2-499 makes it a crime where:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.

VA. CODE § 18.2-499(A).

Section 18.2-500 provides a civil remedy for violations of Code Section 18.2-499, including treble damages and attorney's fees. VA. CODE § 18.2-500. The Plaintiffs are not required to prove actual malice, nor do they need to prove that a conspirator's primary and overriding purpose was to injure them in their trade or business. *Galaxy Computer Servs. Inc. v.*

17

*Baker*, 325 B.R. 544, 555 (E.D. Va. 2005). They do, however, have to prove that the Defendants

acted intentionally and without lawful justification. *Id.*

Relatedly, a common law conspiracy is: "(1) a combination of two or more persons, (2)

by some concerted action, (3) to accomplish some criminal or unlawful purpose, or to

accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means."

*Harrell*, 923 F. Supp. 2d at 825 (quoting *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 337

S.E.2d 744, 748 (Va. 1985)).

The Amended Complaint alleges:

249. In Virginia, only one member of a conspiracy need have legal malice (Doc 1-2; Conspiracy Section), and that he conspires with another to damage the Plaintiffs' respective businesses without the co-conspirator being required to have that malice. The other members need only have been participants in the damaging conduct. The duty stated by law is to not engage in business conspiracies, which by its conduct HSBC has breached as to the Plaintiffs. Ed Wilson conspired with HSBC to illegally move money for the purpose of concealing his money and removing it beyond the reach of creditors, including the Plaintiffs. By this conspiracy Ed Wilson and his co-conspirators including HSBC have damaged the Plaintiffs in their businesses.

250. A bank may not be allowed to refuse to accept a deposit. But the bank can be liable for what it allows with the money after that. HSBC was on ample notice by the transactions received from Ed Wilson that he was money laundering and structuring his transfers, both of which are crimes (Doc 1-2; Liability Section). HSBC had a duty to inquire as to the legitimacy of the source of his funds, which it breached as shown by it continued keeping the accounts open of Wilson and Cardona. Although HSBC received approximately 600 transfers from Bank of America, HSBC also received transfers from Wells Fargo, and Wells Fargo received a transfer directly from the Plaintiff (Adv. Pr. 11-1689, Doc 112-11). HSBC could and should have inquired of Wells Fargo on Wells Fargo's transfers to HSBC, and Wells Fargo could and should have identified the Plaintiff or one of his organizations which are also included herein for having made a transfer directly to an account at Wells Fargo for Fountain Group. The means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself (Doc 1-2; Equity Section).

Docket No. 113 at ¶¶ 249, 250 (Amended Complaint).

The Plaintiffs' allegations fail for two reasons. First, it is not correct to say that "only one member of a conspiracy need have legal malice[.]" To say that a defendant can be a completely innocent party and still be liable as a co-conspirator is inconsistent with the requirement that the parties must act *in concert* to establish a conspiracy. Moreover, the Plaintiffs' position is not consistent with the requirement that the actor must have had legal malice in order to be liable as a co-conspirator. This is not to say that all of the parties must have acted with malice. The Fourth Circuit has held: "§ 18.2-499(B) does not require that the co-conspirator act with legal malice. Rather, the statute simply requires that one party, acting with legal malice, conspire with another party to injure the plaintiff." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 527 (4th Cir. 1997). Still, in order to be held liable as a co-conspirator under Va. Code § 18.2-499, *the defendant* must have acted with legal malice, and there are no facts plead that could plausibly support that conclusion with respect to HSBC in this case. *See, e.g.*, *Shirvinski v. U.S. Coast Guard*, Civil Action No. 1:09–cv–896 (AJT/TRJ), 2010 WL 4279254, at *5 n.7 (E.D. Va. Oct. 25, 2010) (allegation that defendant went along with co-conspirator's statements "would essentially eliminate the statute's agreement and intent requirements for establishing the statutory conspiracy"); *Rogers v. Deane*, 992 F. Supp. 2d 621, 635 (E.D. Va. 2014) ("[plaintiff] cannot sue [defendant] for business conspiracy without evidence that [defendant] conspired to injure her business"), *aff'd* 594 F. App'x 768 (4th Cir. 2014).

Second, it is simply not accurate to say that "HSBC had a duty to inquire as to the legitimacy of the source of [Wilson's] funds[.]" HSBC does not owe the Plaintiffs a duty to ascertain the origins or legitimacy of deposits made to accounts maintained at its banking institutions. "Banks generally do not owe non-customers a duty to protect them from fraud

perpetrated by customers." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 20

(2d Cir. 2011). *See also Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 540 (5th Cir.

2007) ("a bank owes a duty of care to customers but not third parties"); *Eisenberg v. Wachovia

Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that

a bank does not owe a duty of care to a noncustomer with whom the bank has no direct

relationship"). Although the Second Circuit in *MLSMK* alluded to a "narrow exception . . . when

a bank fails to act to safeguard trust funds on deposit in a fiduciary account after receiving 'clear

evidence' of misappropriation," *MLSMK*, 431 F. App'x at 20 (quoting *Lerner v. Fleet Bank,

N.A.*, 459 F.3d 273, 295 (2d. Cir. 2006)), there is no suggestion in the Amended Complaint in

this case that the funds were deposited by Wilson or Fountain Group into designated fiduciary

accounts at HSBC or that HSBC was on notice of a misappropriation of the Plaintiffs' funds. The

Plaintiffs allege that the funds were to be held in escrow, but there is no allegation that HSBC

was ever made aware of the fact that Wilson or Fountain Group were to hold the funds in

escrow.

The Plaintiffs rely on the case of *Contour Indus., Inc. v. U.S. Bank, N.A.*, 437 F. App'x

408 (6th Cir. 2011), for support. *Contour Industries* is an unpublished opinion from the Sixth

Circuit and is not binding on this Court. Arguably, it is inconsistent with the Fourth Circuit's

decision in *Eisenberg*, cited above. In any event, the Court finds it to be distinguishable from the

case at hand. *Contour Industries* involved the good faith defense for banks when they receive

deposits consisting of checks made out to fictitious payees.

*See* TENN. CODE § 47-3-405(b) (UCC 3-405(b)).[8] Section 3-405(b) of the Uniform Commercial

Code is not at issue in this case, nor could it be—there is no suggestion that Mr. Wilson was an

employee of any of the Plaintiffs, nor is there a suggestion that Wilson forged endorsements on

any of the Plaintiffs' checks.

Count 74 fails to state a plausible claim for a violation of Va. Code § 18.2-499, or for a

common law conspiracy, and will be dismissed.

E.  *Count 75—Lost Profits.*

Count 75 is simply a statement of the Plaintiffs' damages, in the form of lost profits.

Docket No. 113 at ¶ 253 (Amended Complaint). (The Plaintiffs improbably claim

$101,327.266.89 in lost profits, based on a lost investment of $300,000.) Count 75 does not state

a cause of action. It will be dismissed.

F.  *Count 76—RICO.*

Finally, the Court reviews Count 76 in order to determine whether it states any plausible

claims against HSBC under RICO. "'To state a claim under [18 U.S.C] § 1962(c), [a plaintiff]

must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

Plaintiff[s] must additionally show that (5) [they were] injured in [their] business or property (6)

by reason of the RICO violation.'" *Goodrow v. Friedman & MacFadyen, P.A.*, Civil Action No.

3:11cv20, 2012 WL 6725617, at *10 (E.D. Va. Dec. 27, 2012) (quoting *Levinson v. Mass. Mut.*

---

[8] Tenn. Code § 47-3-405(b) provides:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person.

TENN. CODE § 47-3-405(b).

*Life. Ins. Co.*, Civil Action No. 4:06cv086, 2006 WL 3337419, at *6 (E.D. Va. Nov. 9, 2006))

(internal quotation marks omitted). Section 1961 of Title 18 of the U.S. Code defines an

"enterprise" as "any individual, partnership, corporation, association, or other legal entity, and

any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. §

1961(4). A RICO enterprise is characterized by "'continuity, unity, shared purpose and

identifiable structure.'" *U.S. v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994) (quoting *U.S. v. Griffin*,

660 F.2d 996, 1000 (4th Cir. 1981)); *Baily v. Atlantic Auto. Corp.*, 992 F. Supp. 2d 560, 581 (D.

Md. 2014) (quoting *Fiel*, 35 F.3d at 1003).

As with the Plaintiffs' conspiracy count, it is hard to see how HSBC was part of the

alleged RICO enterprise here. There is no allegation in the Amended Complaint that HSBC

participated in any predicate acts of racketeering. The most that the Amended Complaint alleges

is that HSBC received wire transfers in Hong Kong to the accounts of its customers, Wilson and

Fountain Group. The Plaintiffs allege: "HSBC had the opportunity to know enough of this, and

in equity that knowledge is imputed." Docket No. 113 at ¶ 255 (Amended Complaint). The

Plaintiffs' allegations, however, fall short of alleging that HSBC participated in a RICO

enterprise.

Count 76 will be dismissed for failure to allege that HSBC was a participant in a RICO

enterprise.

### Conclusion

For the foregoing reasons, the Court will enter a separate Order which will provide:

A.       HSBC's Motion to Dismiss under Rule 12(b)(2) will be granted and the Plaintiffs'

Amended Complaint will be dismissed as against HSBC for lack of personal jurisdiction.

B.      HSBC's Motion to Dismiss under Rule 12(b)(6) will be granted and the Plaintiffs'

claims against HSBC (Counts 69–76, inclusive) will be dismissed for failure to state a claim; and

C.      The Court will make a finding pursuant to Bankruptcy Rule 7054(a)

(incorporating Federal Rule of Civil Procedure 54(b)) that there is no just reason for delay, and

that the judgment will be final as to HSBC Holdings, PLC, and Hong Kong and Shanghai

Banking Corp.

The Clerk shall mail copies of this Memorandum Opinion, or will provide cm-ecf notice

of its entry, to the parties below.


Date: __Jul 20 2015_____                /s/ Brian F. Kenney
                                             _____
                                             Brian F. Kenney
Alexandria, Virginia                         United States Bankruptcy Judge

                                             Entered on Docket: July 20, 2015

Copies to:
Emory E. Hackman, Jr., Esquire
P.O. Drawer 6805
McLean, Virginia 22106-6805
*Pro Se Plaintiff*

Lawrence E. Rifken, Esquire
Michael R. Sklaire, Esquire
Thomas J. McKee, Jr., Esquire
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
*Counsel for Hong Kong and Shanghai Banking Corp. and HSBC Holdings PLC*